**In re Kenneth Allen JONES and Elsa Margarita Jones, Debtors.**

**Bankruptcy No. 92–01750.**

United States Bankruptcy Court, W.D. Washington, at Seattle.

July 7, 1992.

Kenneth O. Eikenberry, Atty. Gen., Mary C. Lobdell, Asst. Atty. Gen., Olympia, Wash., for State of Wash.

Peter H. Arkison, Bellingham, Wash., for trustee.

## OPINION ON MOTION FOR SUMMARY JUDGMENT

SAMUEL J. STEINER, Chief Judge.

### FACTS AND PROCEDURE

The trustee has filed a motion for summary judgment on the issue of whether the debtors may properly exempt Mr. Jones' interest in his Boeing VIP Plan (Voluntary Investment Plan). The Boeing VIP is a § 401(k) plan as defined under the Internal Revenue Code, and is covered by the Employee Retirement Income Security Act (ERISA). Under the Plan, an employee may contribute pre-tax or post-tax dollars, and the company makes matching contributions on the first eight percent of the employee's contributions. Distribution is made upon the employee's retirement, disability, death, separation from service, or attainment of the age of 70½. In addition, the employee may borrow funds or make hardship withdrawals, subject to conditions and penalties outlined in the Internal Revenue Code. Finally, as required by both the IRC and ERISA, the VIP prohibits the assignment or alienation of the employee's interest in the plan.

The debtors have claimed the Plan as exempt under RCW 6.15.020(2), and the trustee has objected, alleging that the exemption statute has been preempted by ERISA. The Attorney General for the State of Washington has filed a memorandum in opposition to the trustee's motion for summary judgment. The State's position is that the VIP Plan is not property of the estate in the first instance, and hence the Court need not reach the issue of whether the exemption is proper.

### DOES THE ATTORNEY GENERAL HAVE STANDING TO INTERVENE IN THE PROCEEDING?

The Attorney General for the State of Washington filed a memorandum in opposition to the trustee's motion for summary judgment, citing RCW 7.24.110 in support of its appearance. The right of the State to be heard in federal court is governed not by state law but by 28 U.S.C. § 2403(b), which provides as follows:

In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

While the State did not cite the proper authority for its appearance, nevertheless it is entitled to be heard as to the constitutionality of the state statute.

## IS THE BOEING COMPANY'S VIP PLAN PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE?

Section 541(c)(2) provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The trustee takes the position that the Plan is property of the estate, based on a line of Ninth Circuit cases ending with *Pitrat v. Garlikov*, 947 F.2d 419 (9th Cir. 1991), and *In re Reed*, 951 F.2d 1046 (9th Cir.1991). These cases and their progeny are all based on a construction of § 541(c)(2) that limits its applicability to restrictions on transfer that are enforceable under state spendthrift law. The focus of the trustee's argument is that the Boeing VIP Plan is a voluntary savings plan and hence a self-settled trust. As such, any restrictions on transfer would be unenforceable under state spendthrift trust law, and the fund would thus not be excluded from the estate under the holding of *In re Jordan*, 914 F.2d 197 (9th Cir.1990).

In its response, the State cites *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), in which the Su-

preme Court expressly rejected the construction of § 541(c)(2) that limited its applicability to state spendthrift law, giving the phrase "applicable nonbankruptcy law" its plain meaning instead. If a retirement plan contains restrictions on transfer that are enforceable under any nonbankruptcy law, including federal law, then it is not property of the estate. The source of the funds and the debtor's limited ability to reach them are irrelevant, unless those issues affect the enforceability of the plan provisions under the applicable law. Thus the Ninth Circuit cases cited by the trustee have all been effectively reversed.

Having concluded that "applicable nonbankruptcy law" is not limited to state law, the Court specifically held that "[t]he antialienation provision required for ERISA qualification and contained in the Plan at issue in this case ... constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." —— U.S. at ——, 112 S.Ct. at 2248.

The Court rejected the petitioner's contention that a broad reading of § 541(c)(2) would undermine the policy of the Bankruptcy Code as a whole. To this contention the Court replied:

[T]o the extent that policy considerations are even relevant where the language of the statute is so clear, we believe that our construction of § 541(c)(2) is preferable to the one petitioner urges upon us.

First, the Court explained that pension benefits should not be more accessible to creditors within the bankruptcy context than they are outside it. Otherwise, the way is open to creditors to "engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds." *Id.* —— U.S. at ——, 112 S.Ct. at 2250. Further, the Court noted that its holding gives full and appropriate effect to ERISA's goal of protecting pension benefits "even if that decision prevents others from securing relief for the wrongs done them." *Id.* This language was borrowed from *Guidry v. Sheet Metal Workers Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), in which the Court de-

clined to allow a labor union to impose a constructive trust on the pension benefits of a corrupt union official. Finally, the Court cited the important principal of ensuring that pension benefits will be governed uniformly by ERISA, "not left to the vagaries of state spendthrift trust law." —— U.S. at ——, 112 S.Ct. at 2250.

In light of its conclusion that a debtor's interest in an ERISA-qualified pension may be excluded form the property of the bankruptcy estate pursuant to § 541(c)(2), the Court found it unnecessary to address the debtor's alternative argument that his interest in the plan qualifies for exemption under § 522(b)(2)(A).

In light of the Supreme Court's clear ruling on the § 541(c)(2) issue, this Court need not reach the issue as to whether the anti-assignment provisions in the VIP Plan qualify it for the debtor's claim of exemption either under § 522(b)(2)(A) of the Bankruptcy Code or under RCW 6.15.020.

## CONCLUSION

The debtors' interest in the Boeing Company's VIP Plan is not property of the debtors' bankruptcy estate.